UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MOLLY TSAI,
        Plaintiff,


        v.                              CIVIL ACTION NO.
                                        15-11676-MBB


ROBERT A. MCDONALD, SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS,
        Defendant.



**MEMORANDUM AND ORDER RE:**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 35);**
**PLAINTIFF'S MOTION TO STRIKE (DOCKET ENTRY # 45)**

**August 16, 2017**

**BOWLER, U.S.M.J.**

        Pending before this court is a motion for summary judgment
filed by defendant Robert McDonald ("defendant"), Secretary of
the Department of Veteran Affairs.  (Docket Entry # 35).
Plaintiff Molly Tsai ("plaintiff") opposes the motion (Docket
Entry # 40) and also seeks to strike selected exhibits from the
summary judgment record.  (Docket Entry # 45).  After conducting
a hearing on May 16, 2017, this court took the motions (Docket
Entry ## 35, 45) under advisement.

                    PROCEDURAL BACKGROUND

        The parties' dispute arises out of plaintiff's employment
with the Department of Veteran Affairs ("VA").  The three-count

amended complaint sets out the following causes of action:  (1) racial discrimination in violation of 42 U.S.C. § 2000e-2(a)(1) ("Title VII") (Count One); (2) national origin discrimination in violation of Title VII (Count Two); and (3) breach of contract (Count Three).  (Docket Entry # 13).  Plaintiff stipulated to the dismissal of Count Three without prejudice.  (Docket Entry # 31).

In July 2010, plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") that her March 12, 2010 termination was due to her race and national origin. (Docket Entry # 13, ¶ 8) (Docket Entry # 20, ¶ 8).  In November 2010, the Equal Employment Opportunity investigator ("EEO investigator") concluded that plaintiff failed to show that the reasons for the dismissal were a pretext for discrimination. (Docket Entry # 13, p. 2).  Thereafter, plaintiff brought this action.  (Docket Entry # 13, p. 3).

<u>STANDARD OF REVIEW</u>

Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  <u>Dàvila v. Corporaciòn De Puerto Rico Para La Difusiòn Pùblica</u>, 498 F.3d 9, 12 (1st Cir. 2007).  It is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).

It is inappropriate "if the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side." Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).

"Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014). The evidence is viewed "in the light most favorable to the non-moving party" and "all reasonable inferences" are drawn in her favor. Ahmed v. Johnson, 752 F.3d 490, 495 (1st Cir. 2014). Where, as here, the nonmovant bears the burden of proof at trial, she "must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment." Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014); see Woodward v. Emulex Corp., 714 F.3d 632, 637 (1st Cir. 2013) (as to issues on which nonmovant bears burden of proof, he must "'demonstrate that a trier of fact reasonably could find in his favor'").

"Unsupported allegations and speculation do not demonstrate either entitlement to summary judgment or the existence of a genuine issue of material fact sufficient to defeat summary judgment." Rivera-Colon v. Mills, 635 F.3d 9, 12 (1st Cir.

2011); see Serra v. Quantum Servicing, Corp., 747 F.3d 37, 39–40 (1st Cir. 2014) ("allegations of a merely speculative or conclusory nature are rightly disregarded").  That said, a court "'should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent.'"  Adamson v. Walgreens Co., 750 F.3d 73, 83 (1st Cir. 2014).

Defendant submits an LR. 56.1 statement of undisputed facts.  Uncontroverted statements of fact in the LR. 56.1 statement comprise part of the summary judgment record.  See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003); Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (citing LR. 56.1 and deeming admitted undisputed material facts that the plaintiff failed to controvert).

FACTUAL BACKGROUND

I.  Plaintiff's Employment History

Plaintiff, a registered and licensed pharmacy technician, is an Asian female who immigrated to the United States from Taiwan.  (Docket Entry # 36-11, p. 7)[1] (Docket Entry # 42).  On June 7, 2009, she was hired as a pharmacy technician for the West Roxbury campus of the VA which is located in West Roxbury, Massachusetts and is part of the VA Boston Healthcare Systems

---

[1]  Page numbers refer to the docketed page numbers rather than the page numbers in the actual exhibits.

4

("West Roxbury VA"). (Docket Entry # 13, ¶¶ 25, 26) (Docket Entry # 20, ¶¶ 25, 26). Plaintiff was removed from this position, effective March 12, 2010, which was still within her probationary period. (Docket Entry # 36-1, p. 2). At the time of firing, plaintiff was told she was being terminated for "performance issues." (Docket Entry # 36-1, p. 3). During plaintiff's time at the West Roxbury VA, her direct supervisor was Shawn Saunders ("Saunders"). (Docket Entry # 42, p. 2).

Hilary Dike ("Dike"), a pharmacy technician for the VA since November 28, 2004, was a coworker of plaintiff. (Docket Entry # 43). Dike was assigned to the out-patient pharmacy at the West Roxbury VA during the period of time that plaintiff worked at the in-patient pharmacy at the West Roxbury VA.[2] (Docket Entry # 43). While Dike did not work side-by-side with plaintiff, she "interact[ed] with her on a daily basis and was able to observe how" plaintiff performed her job. (Docket Entry # 43). Dike describes plaintiff as "hard-working, efficient, and very competent . . .." (Docket Entry # 43).

Plaintiff testified that Saunders counseled her in regard to her work performance at meetings in August and November of 2009 and that no other meetings took place regarding her

---

[2] It is not completely clear whether Dike worked at the West Roxbury VA for the entire period of 2004 to 2009. As noted above, however, Dike worked at the West Roxbury VA throughout the relevant time period.

performance.[3]  (Docket Entry # 42, p. 4).  At the August 2009

meeting, Saunders counseled plaintiff about the need to improve

her speed and efficiency.  (Docket Entry # 36-9, p. 7) (Docket

Entry # 42, p. 4).  According to plaintiff, Saunders gave no

indication to plaintiff that her job was in peril.  (Docket

Entry # 42, p. 4).  Saunders' supervisor, Martin Abramson

("Abramson"), was not directly involved or present at any of the

meetings between plaintiff and Saunders.[4]  (Docket Entry # 36-6,

p. 5).  At the November 2009 meeting, only plaintiff and

Saunders were in attendance.  (Docket Entry # 48-1, p. 8).

       During plaintiff's employment, she was the only Asian

employee working the first shift at the in-patient pharmacy at

the West Roxbury VA.  (Docket Entry # 42, p. 5).  There were six

other full-time pharmacy technicians working the first shift at

---

[3]  Saunders testified that there were numerous meetings regarding
plaintiff's performance and that retraining was provided and
accepted at each meeting.  (Docket Entry # 36-5, p. 4).  Viewing
the record in plaintiff's favor, the above testimony by
plaintiff refutes Saunders' contrary testimony as to the
existence of additional meetings beyond the August and November
2009 meetings.
[4]  Plaintiff moves to strike the deposition testimony of Abramson
as hearsay.  (Docket Entry # 45).  According to Abramson's
deposition, plaintiff was counseled with specific examples many
times by Saunders.  (Docket Entry # 36-6, p. 5).  Non-expert
testimony is inadmissible if not made on personal knowledge.
See Fed.R.Evid. 602.  Abramson was not at any of the meetings
with plaintiff any deposition testimony by Abramson regarding
things said or done at the meetings is therefore inadmissible.
As Saunders' supervisor, however, Abramson can testify as to the
fact that he was aware that those meetings occurred.  See
Fed.R.Evid. 602.

the in-patient pharmacy at the West Roxbury VA. (Docket Entry #
42, p. 5). Two were African American employees and four were
Caucasian employees. (Docket Entry # 42, pp. 5-6). An African
American woman was the only employee fired from the in-patient
pharmacy at the West Roxbury VA during plaintiff's tenure.[5]
(Docket Entry # 42, p. 6).

Two of the Caucasian employees who were working at the same
time as plaintiff, Anthony Trodella ("Trodella") and Marta Kane
("Kane"), were given increased responsibility. (Docket Entry #
36-9, p. 16). Plaintiff describes Trodella as "native-American"
and Kane as a "native-born American."[6] (Docket Entry # 42, p. 5).
Kane was hired in September of 2009 and promoted to inspectional
safety officer after working as a pharmacy technician for three
months and still within her probationary period. (Docket Entry
# 42, p. 5). Plaintiff testified that she trained Kane on
certain aspects of her job. (Docket Entry # 42, p. 5).

---

[5] The record does not indicate if this employee was also a
pharmacy technician. Saunders disputes this and recalls that
two Caucasian employees were also terminated. (Docket Entry #
36-12). He does not recall the date[s] of termination.
(Docket Entry # 36-12). Additionally, Saunders states in his
affidavit, submitted to the EEOC as part of the EEOC proceedings
in October of 2010, that he had "not removed an employee under
similar circumstances" for the last two years. (Docket Entry #
36-5, p. 5). The record does not indicate where these employees
worked or what their job titles were.
[6] Construing the record in plaintiff's favor, this court draws
the reasonable inference that "native-American" in this context
refers to someone born in the United States and does not imply
that Trodella is of "native American" ethnicity.

Trodella was hired several months before Tsai was hired.
(Docket Entry # 42, p. 5).  Trodella was promoted to lead
pharmacy technician after working as a pharmacy technician for
six months and still within his probationary period.  (Docket
Entry # 36-11, p. 2) (Docket Entry # 42, p. 5).  Plaintiff
testified that she trained Trodella on some aspects of his job,
specifically with regards to the "Pyxis system."  (Docket Entry
# 36-11, p. 9) (Docket Entry # 42, p. 5).  Trodella was
unfamiliar with this system.  (Docket Entry # 36-11, p. 9).

Plaintiff stated that neither Trodella nor Kane applied for
these positions and were instead promoted to them.  (Docket
Entry # 36-11, p. 4).  Plaintiff was unaware if either of these
promotions included a pay increase or merely an increase in
responsibility.  (Docket Entry # 36-11, pp. 2, 4).  Additionally,
plaintiff is a registered pharmacy technician and has been
licensed "for close to ten years."  (Docket Entry # 36-11, pp.
7-8).  Plaintiff testified that to get licensed "[y]ou have to
take the national license exam," which Massachusetts does not
require.  (Docket Entry # 36-11, p. 8).  Rather Massachusetts
just requires pharmacy technicians "to be registered" in order
"to have a job as a pharmacy technician," according to

plaintiff.[7]  (Docket Entry # 36-11, p. 8).  The record does not

indicate if either Trodella or Kane were licensed pharmacy

technicians.

Throughout plaintiff's employment, Saunders received

various emailed complaints from coworkers about the poor quality

of plaintiff's work.[8]  (Docket Entry # 36-9, pp. 3-4, 6-13).  On

---

[7] Registration is required for pharmacy technicians in
Massachusetts and pharmacy technicians are required to
reregister every two years.  247 Mass. Code Regs. 8.07.
[8] "[H]earsay evidence cannot be considered on summary judgment
'for the truth of the matter asserted.'"  Evergreen Partnering
Group, Inc. v. Pactiv Corp., 832 F.3d 1, 12 (1st Cir. 2016).
Accordingly, the statements in the emails about plaintiff's poor
performance are not considered for the truth of the matter
asserted, i.e., that plaintiff performed poorly or made the
mistakes alleged.  See Xiaoyan Tang v. Citizens Bank, N.A., 821
F.3d 206, 221 n.15 (1st Cir. 2016).  Rather, the emailed
complaints are considered to show that Joseph Reis ("Reis"), a
human resources specialist, had reason to believe that plaintiff
was performing poorly.  See id. ("these emails were not admitted
to demonstrate that Tang was a poor performer, but that those in
charge of hiring decisions at Citizens had reason to believe
that she was").  Indeed, under similar circumstances, the First
Circuit in Xiaoyan upheld the lower court's consideration of
emails between the plaintiff and her supervisors regarding the
plaintiff's work problems that were forwarded to an individual
in the human resources department in order to show the decision
makers in human resources had reason to believe she was as poor
performer.  Id. at 221-222, n.15.  Likewise, here the emails
themselves were not the basis for the termination (Docket Entry
# 36-5, p. 5) but they did provide reason for Reis to believe
that plaintiff had performance deficiencies which, in turn, was
the basis for the termination.  (Docket Entry # 36-3, p. 3).
Similarly, Saunders, who had personal knowledge of some of the
deficient performances by plaintiff as her supervisor and a
participant in those deficient performance events, did not use
the emails as the basis for the termination decision because the
basis for termination was plaintiff's poor performance and lack
of improvement.  (Docket Entry # 36-5).  Again, the emails are
not considered as evidence that plaintiff made the mistakes

April 11, 2009, Saunders emailed Reis in order to discuss plaintiff's termination. (Docket Entry # 36-9, p. 2). Saunders followed up his email to Reis with two complaints Saunders received via email from plaintiff's coworkers. (Docket Entry # 36-9, pp. 3, 4). On September 30, 2009, Saunders emailed Reis and carbon copied William Flanagan ("Flanagan")[9] with a summary of various coworker's complaints and Saunders' actions in response to the complaints.[10] (Docket Entry # 36-9, pp. 6, 7). Saunders suggested plaintiff's removal in the September 30, 2009 email. (Docket Entry # 36-9, p. 7). On February 12, 2010, Saunders provided Flanagan with an updated summary of coworker's complaints about plaintiff and his actions in response to the complaints, including a plan to meet with plaintiff every other week.[11] (Docket Entry # 36-9, pp. 8-14).

On February 12, 2010, Flanagan forwarded this email thread

---

described or had the performance deficiencies mentioned. Rather, the emails show that Saunders as well as Reis had reason to believe plaintiff had performance deficiencies and, thus, a non-discriminatory motive for termination. See Xiaoyan, 821 F.3d at 221-22 n.15.

[9] According to Saunders' EEOC affidavit, Flanagan is an operations manager and Saunders' first level supervisor. (Docket Entry # 26-5, p. 3).

[10] As noted previously, the email complaints are not admitted to show the truth of the matters asserted, i.e., that plaintiff made the mistakes alleged. Instead, the statements are considered to show that Saunders had a *reason to believe* that plaintiff was performing poorly and making mistakes. See Xiaoyan, 821 F.3d at 221 N.15. Saunders' testimony as to his own response and reaction to the emails is also not hearsay.

[11] See the previous footnote.

to Abramson.  (Docket Entry # 36-9, p. 8).  On February 16, 2010, Abramson replied asking when Flanagan wanted to remove plaintiff. (Docket Entry # 36-9, p. 8).  On February 17, 2010, Saunders informed Abramson and Flanagan that he had a meeting scheduled with plaintiff on February 18, 2010 and advised them he "would like to remove" plaintiff as soon as possible.  (Docket Entry # 36-9, p. 15).  After the meeting on February 18, Saunders again updated Abramson and Flanagan indicating that Saunders had concluded the meeting with plaintiff by warning her that "her continued errors and issues have prompted discussion within management of her removal and we will need to make a decision soon."  (Docket Entry # 36-9, p. 15).  Finally, on March 9, 2010, Abramson informed Reis by email copied to Saunders, Flanagan, and others that, "We would like to release [plaintiff] as soon as possible."  (Docket Entry # 36-9, p. 15).  During the termination process, Reis provided guidance to Rhonda DeChambeau ("DeChambeau"), assistant chief of the human resources management service ("HRMS"), who decided *for* the chief of HRMS to "proceed with termination."  (Docket Entry # 36-3, pp. 4-5). Plaintiff was fired three days later, on March 12, 2010. (Docket Entry # 36-1, p. 2).

II.  Performance Appraisal

Plaintiff states that at the November 2009 meeting, Saunders told her that her performance was "satisfactory" and

did not indicate any need for improvement.[12] (Docket Entry # 42, p. 4). Plaintiff testified that Saunders gave her a two-page appraisal document and that Saunders directed her to sign the document without providing her an opportunity to read the document.[13] (Docket Entry # 42, pp. 4-5). Plaintiff did not receive a copy of this document. (Docket Entry # 42, p. 5).

During the EEOC proceedings, the VA produced a six-page document purporting to be the performance appraisal document from the November 2009 meeting.[14] (Docket Entry # 42, p. 4).

---

[12] Plaintiff's recitation of Saunders' statement is used to show both knowledge that plaintiff was told that her performance was satisfactory and discriminatory intent as to plaintiff's termination for poor performance, and not for the truth of the matter asserted, i.e., that plaintiff's work was in fact satisfactory. Saunders disputes this statement, stating that he completed a performance appraisal and rated her as "Minimally Satisfactory" and that they discussed "her performance issues and the need for improvement . . . or removal." (Docket Entry # 36-5, pp. 10-11).

[13] Saunders testified that he gave plaintiff a six-page appraisal form that she reviewed and signed. (Docket Entry # 36-1, p. 3).

[14] Plaintiff seeks to strike the performance appraisal as not authenticated and inadmissible with respect to proving the truth of what it asserts, namely, that plaintiff's work was unsatisfactory. (Docket Entry # 45). The performance appraisal was properly authenticated by Saunders' deposition. (Docket Entry # 48-1, p. 8). Additionally, the discrepancies that exist in the performance appraisal raise questions as to its weight and not its admissibility. See United States v. Deverso, 518 F.3d 1250, 1256 (11th Cir. 2008); see also United States v. McGowan, 552 Fed.Appx. 950, 955 (11th Cir. 2014) (finding that "[a] challenge to the reliability of information in a document" that has been properly authenticated "'goes to the weight of the evidence, not its admissibility on the grounds of authentication'") (quoting Deverso, 518 F.3d at 1256). While questions regarding discrepancies and weight are typically left

Defendant filed this document as part of the summary judgment record. (Docket Entry # 36-8). Plaintiff signed the document on the first, fourth, and sixth pages. (Docket Entry # 36-8, pp. 2, 5, 7). The dates next to plaintiff's signature and Saunders' signature on the first page are illegible. (Docket Entry # 36-8, p. 2). The dates next to plaintiff's signature and Saunders' signature on the fourth page appear to be November, 9, 2009. (Docket Entry # 36-8, p. 5). The dates next to plaintiff's signature, Saunders' signature, and the approval official's signature[15] on the sixth page appear to be November 12, 2009, November 6, 2009, and November 23, 2009, respectively. (Docket Entry # 36-8, p. 7).

The fifth page lays out six different categories on which plaintiff was evaluated.[16] (Docket Entry # 36-8, p. 6). Of the six categories, "Prescription Processing" and "Medication Processing" are considered critical elements of the pharmacy technician's job. (Docket Entry # 36-8, p. 6). The first and

---

to the jury, on summary judgment they are resolved in favor of nonmoving party. See Woodman v. Haemonetics Corp., 51 F.3d 1087, 1094 (1st Cir. 1995) (whether or not statement was probative of pretext and discrimination as well as *untruthfulness* of performance review were to be resolved in favor of the nonmoving party on summary judgment) (emphasis in original).
[15] The approval official's signature appears to be William Flanagan.
[16] The six categories on the performance appraisal are: (1) prescription processing; (2) medication processing; (3) inventory control; (4) communication and reports; (5) pharmacy mission; and (6) safety. (Docket Entry # 36-8, p. 6).

second pages define the six categories and give examples of what constitutes "Fully Successful" performance for each category. (Docket Entry # 36-8, pp. 1-2).

The third page, which is unsigned, provides feedback specific to plaintiff for each of the six categories. (Docket Entry # 36-8, p. 4). The fifth page, which is also unsigned, indicates that plaintiff was "Less than Fully Successful" in categories one through three, which includes both critical elements of plaintiff's job, and "Fully Successful" in the remaining three categories. (Docket Entry # 36-8, p. 6). The sixth page, which is signed by plaintiff, Saunders, and the approval official, indicates that plaintiff was "Fully Successful" in the critical elements of her job and "Less Than Fully Successful" in some of the non-critical elements of her job. (Docket Entry # 36-8, p. 7).

Additionally, page three of the performance appraisal is a different style from the other pages,[17] is not referenced in any of the sections providing for additional comments, and does not have a typed page number. (Docket Entry # 36-8, p. 4). In particular, page three has no typeset page number while pages two, four, five, and six have the numbers "2," "3," "4," and "5," respectively, typed at the bottom of each page. (Docket

---

[17] The appraisal form is a standardized form. Page three, however, does not have a border and does not have a footer. (Docket Entry # 36-8, p. 4).

Entry # 36-8, pp. 3, 5-7).

III.  Policy and Collective Bargaining Agreement

     While employed as a probationary employee at the West
Roxbury VA, plaintiff was governed by the "VA Boston Healthcare
System Policy" ("the Policy") and a party to a collective
bargaining agreement ("the CBA").[18]  (Docket Entry # 42, p. 2).
The Policy required observation, guidance, and assistance in the
completion of a probationary employee's job.  (Docket Entry #
42-1).  As part of the CBA, the supervisor was encouraged to
communicate frequently with the probationary employee.  (Docket
Entry # 42-2, p. 9).  In the event of deficiencies with the
probationary employee's work, the CBA states that, "supervisors

_____

[18]  Defendant argues that plaintiff cannot raise the failure to
follow the CBA or the Policy as a claim because she failed to
raise the claim in the EEOC complant and it is therefore outside
the scope of the EEOC investigation.  (Docket Entry # 48).  The
scope of the complaint is "limited to the charge filed with the
EEOC and the investigation which can reasonably be expected to
grow out of that charge."  Fantini v. Salem State College, 557
F.3d 22, 26-27 (1st Cir. 2009); see also Velazquez-Ortiz v.
Vilsack, 657 F.3d 64, 71-72 (1st Cir. 2011) (finding that
bringing claims for age discrimination and retaliation does not
put defendant on notice of gender discrimination).  As it
presently stands, the amended complaint in this action does not
include a claim that defendant failed to follow the CBA or the
Policy.  In fact, the parties stipulated to a dismissal of Count
III which alleges that defendant breached the CBA.  (Docket
Entry # 31).  Plaintiff is therefore not bringing a claim that
defendant failed to follow the CBA or the Policy.  Rather, she
is appropriately seeking to use evidence of that failure to
support the existing claims of racial and national origin
discrimination.  Plaintiff can use the failure to follow the CBA
and the Policy as evidence of pretext to support the existing
discrimination claims.  See Morales-Vallellanes, 339 F.3d at 18.

will counsel employees in a timely manner and document the meeting with a copy given to the employee." (Docket Entry # 42-2, p. 9). Plaintiff did not receive copies of the documents that were part of her appraisal. (Docket Entry # 42, p. 4).

DISCUSSION

I.  <u>Motion for Summary Judgment</u>

Plaintiff submits that defendant discriminated against her on the basis of her race (Count One) and her national origin (Count Two) in violation of Title VII. (Docket Entry # 13). Defendant seeks summary judgment because plaintiff failed to set out a prima facie case. Even if plaintiff established a prima facie case, defendant argues that he has shown a legitimate reason for the termination and that there is no evidence of pretext or any implication that the employer's conduct was discriminatory.

Where, as here, there is no direct evidence of discrimination, courts use the familiar, analytical framework outlined by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973), and <u>Tex. Dep't. of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252 (1981). Under this framework, the plaintiff bears the initial burden to establish the elements of a prima facie case. <u>McDonnell Douglas</u>, 411 U.S. at 802. This minimal showing functions to raise an inference of discrimination. <u>Burdine</u>, 450 U.S. at 253-54. The burden of

16

production then shifts "to the employer to articulate some
legitimate, nondiscriminatory reason" for the employment action.
McDonnell Douglas, 411 U.S. at 802.  If the defendant succeeds,
the plaintiff is afforded a "fair opportunity to show that
[defendant's] stated reason" is a pretext.  Id. at 804.
Throughout, "the plaintiff bears the 'ultimate burden of
persuading the trier of fact that the defendant intentionally
discriminated against the plaintiff.'"  Gu v. Boston Police
Dep't., 312 F.3d 6, 11 (1st Cir. 2002) (quoting Burdine, 450 U.S.
at 253).

On summary judgment, the question reduces to whether
plaintiff has "adduced the requisite evidence to permit a jury
to find that [her] race [or national origin] played a motivating
role" in the adverse action.  Ahmed, 752 F.3d at 503; see
Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 40 (1st Cir.
2013) (employee avoids summary judgment by raising genuine
factual issues that the adverse action "'was motivated by . . .
discrimination'"); Acevedo-Parrilla v. Novartis Ex-Lax, Inc.,
696 F.3d 128, 147 (1st Cir. 2012) (reversing summary judgment
for employer because employee's proffer was "sufficient to raise
a genuine issue of material fact as to whether discrimination
motivated the adverse employment action").  "In a proper case,
the trier of fact may infer the ultimate fact of discrimination
from components of the plaintiff's prima facie showing combined

with compelling proof of the pretextual nature of the employer's explanation." Rathburn v. Autozone, Inc., 361 F.3d 62, 72 (1st Cir. 2004); accord Ahmed, 752 F.3d at 498; see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000) ("[p]roof that" an employer's "explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive").

A showing of pretext does "not inevitably reveal discrimination" but, combined with additional evidence, suffices to show discrimination and thereby avoid summary judgment. See Ahmed, 752 F.3d at 498; accord Reeves, 530 U.S. at 146 ("factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* summary judgment"). "The ultimate question" remains "whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct.'" Reeves, 530 U.S. at 146 (ellipses omitted).

A. Prima Facie Showing

Defendant argues that plaintiff fails to establish a prima facie case because she was fired for poor work performance and that plaintiff never disputes her poor work performance or

provides evidence contrary to the performance deficiencies. (Docket Entry # 36, p. 6).  Plaintiff does in fact dispute her poor work performance and argues that she satisfies the prima facie case because she performed her job satisfactorily. (Docket Entry # 40, p. 5) (Docket Entry # 43).

To establish a prima facie case of racial discrimination plaintiff must establish that:  (1) she "was within a protected class"; (2) she "possessed the necessary qualifications and adequately performed her job"; (3) she "was nevertheless dismissed"; and (4) her "employer sought someone of roughly equivalent qualifications to perform substantially the same work."  See Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 58 (1st Cir. 2005); Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003).  Defendant disputes the second prong, namely, that plaintiff possessed the necessary qualifications and was performing her job at an acceptable level. Plaintiff's "burden under the 'qualified' prong of the prima facie case . . . is met if [s]he presents 'evidence which if believed, prove[s], that [s]he was doing [her] chores proficiently.'"  Acevedo 696 F.3d at 139 (quoting Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988)).

Here, plaintiff was a registered and licensed pharmacy

technician.[19]  (Docket Entry # 36-11, p. 7).  The record also
indicates that plaintiff had been a licensed pharmacy technician
since 2002.  Plaintiff also provides testimony, through a
coworker, that she was "hard-working, efficient, and very
competent . . .."  (Docket Entry # 43).  In addition, plaintiff
trained her fellow employees on processes with which they were
uncomfortable.  Accordingly, plaintiff satisfies the second
prong of the prima facie case for purposes of the summary
judgment motion.

B.   Legitimate Nondiscriminatory Reason

     Once a plaintiff establishes a prima facie case of
discrimination, the burden of production shifts to the defendant
to articulate a legitimate, nondiscriminatory reason.  See
Pearson, 723 F.3d at 40.  Defendant argues that he established a
legitimate, nondiscriminatory reason for firing plaintiff by
providing testimony that Saunders relied on complaints about the
deficiencies in plaintiff's performance.  Plaintiff disagrees
and questions the accuracy of the performance appraisal that
lays out some of her deficiencies.  She also questions the
authenticity of the email complaints.

     An employee's poor work performance constitutes a
legitimate nondiscriminatory reason for the employee's
termination.  See Garcia v. Bristol-Myers Squibb Co., 535 F.3d

---

[19]  See footnote seven.

23, 31 (1st Cir. 2008). Here, defendant provides a series of emails and email chains that include and summarize complaints about plaintiff's work performance.[20] (Docket Entry # 36-9). Defendant also provides a six-page performance appraisal that raises concerns with the quality of plaintiff's work. (Docket Entry # 36-8). The list of grievances in the emails includes mispackaging medication for patients, taking a long time to deliver medication to patients, and leaving medication unattended. (Docket Entry # 36-9, pp. 6, 7). The performance appraisal ranks plaintiff as minimally satisfactory and provides that there were concerns with her "timely completion of work," "prepackaging errors," and "empty packets resulting in missing medications." (Docket Entry # 36-8, p. 4). Defendant therefore proffered a legitimate non-discriminatory reason for firing plaintiff by establishing there was reason to believe plaintiff was not adequately performing her job.

C.  Pretext

Plaintiff argues that defendant's reason for firing her was a pretext for unlawful discrimination. To support the assertion of pretext, plaintiff points out discrepancies that question the veracity of the performance appraisal. Plaintiff also maintains

---

[20] As noted above, the email complaints are not admitted to show the truth of the matters asserted, i.e., that plaintiff made the mistakes alleged. Instead, the statements are considered to show that Saunders had reason to believe that plaintiff was making mistakes.

she was treated differently than two, similarly situated
Caucasian employees and was treated differently than was
required by the CBA and the Policy.  Defendant disputes these
allegations and submits that the Caucasian employees were not
similarly situated to plaintiff.  Defendant argues that the
assertion that defendant violated the CBA and the Policy should
be dismissed because plaintiff failed to raise it during the
course of the EEOC proceedings.[21]  If not dismissed on those
grounds, the failure to follow the CBA or the Policy does not
show pretext, according to defendant.

A plaintiff will avoid summary judgment by raising genuine
factual issues that the adverse action "'was motivated by . . .
discrimination.'"  Acevedo 696 F.3d at 147.  Depending on the
strength of the showings, the trier of fact may infer
discrimination from a combination of elements from the prima
facie case and compelling proof of pretext.  See Rathburn, 361
F.3d at 72.  While the "factfinder's rejection of the employer's
legitimate, nondiscriminatory reason" does not compel summary
judgment, it is "circumstantial evidence that is probative of
intentional discrimination, and it may be quite persuasive."
Reeves, 530 U.S. at 146-47.

"An employer's disparate treatment of" similarly situated
employees "can provide evidence of discriminatory animus."

---

[21]  As explained in footnote 18, the above argument lacks merit.

Velez v. Thermo King de Puerto Rico, Inc., 585 F.3 441, 451 (1st
Cir. 2009).  Similarly situated employees do not need to be in
exactly the same situation, but they need to be in roughly
equivalent situations.  See id.  "[D]isparate treatment 'must
rest on proof'" that the employees are "'similarly situated in
material respects,'" in "order to be probative of discriminatory
animus."  Id.

In this case, Dike testified that plaintiff was hard-
working, efficient, and competent; in direct conflict with the
nondiscriminatory reasons presented by defendant.  (Docket Entry
# 43) (Docket Entry # 36-9).  The performance appraisal reflects
there were concerns with the timely completion of work and with
mispackaging of medication.  (Docket Entry # 36-8).
Discrepancies regarding plaintiff's performance exist within the
submitted six-page appraisal itself.  (Docket Entry # 36-8).
The fifth page, which is unsigned, indicates that plaintiff was
"Less than Fully Successful" in both critical elements of
plaintiff's job, and "Fully Successful" in three of the four
remaining categories, while the sixth page, which is signed by
plaintiff, Saunders, and the approval official, indicates that
plaintiff was "Fully Successful" in the critical elements of her
job and "Less Than Fully Successful" in some of the non-critical
elements of her job. (Docket Entry # 36-8, pp. 6-7).
Additionally, plaintiff testified that:  she was never shown or

even aware of the six-page appraisal; she was asked to sign the two-page appraisal; she was never given an opportunity to review the two-page appraisal; and she never received a copy of the two-page appraisal. (Docket Entry # 36-9, p. 16). Page three is the page most critical of plaintiff and is missing a typeset page number, is formatted differently, and is unsigned by either plaintiff or any of her supervisors. (Docket Entry # 36-8).

Plaintiff also argues she was treated differently than Trodella and Kane, who were similarly situated to her. Plaintiff, Trodella, and Kane were pharmacy technicians at the West Roxbury VA in-patient pharmacy. Plaintiff was hired a few months after Trodella and a few months before Kane. Plaintiff, Trodella, and Kane were all within their probationary periods. Plaintiff taught both Trodella and Kane aspects of their jobs. Plaintiff was never given the opportunities that both Trodella and Kane were. (Docket Entry # 42, pp. 5-6). For example, Trodella was promoted to the lead pharmacy technician within his first six months, and Kane was promoted to the inspectional safety officer within her first three months. (Docket Entry # 42, p. 5). Plaintiff was fired during her probationary period while Trodella and Kane were not. Additionally, plaintiff was treated differently than both the CBA and the Policy prescribed that she should be treated.

On summary judgment, the facts and reasonable inferences

are construed in favor of the non-moving party, plaintiff. As noted above, a court "'should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent.'" Adamson, 750 F.3d at 83; accord Xiaoyan, 821 F.3d at 222-23. Here, a jury could infer both pretext and discriminatory animus from the disputed facts, including the performance appraisal, the disparate treatment of similarly situated employees, and the failure to follow the CBA and the Policy. Hence, counts one and two do not merit summary judgment.

## II. Motion to Strike

Plaintiff moves to strike certain exhibits (Docket Entry ## 36-2, 36-3, 36-5, 36-6, 36-7, 36-8, 36-9, 36-10) accompanying defendant's LR. 56.1 statement of undisputed facts. (Docket Entry # 45). Five of these exhibits are affidavits filed during the EEOC proceedings. (Docket Entry ## 36-3, 36-5, 36-6, 36-7, 36-10). She also seeks to strike the performance appraisal (Docket Entry # 36-8) and an exhibit containing a series of internal emails regarding plaintiff and her performance issues (Docket Entry # 36-9). Plaintiff submits that various exhibits are not properly authenticated, supported by personal knowledge, irrelevant and/or constitute hearsay. (Docket Entry # 40). Defendant argues that the exhibits have been authenticated by an affidavit of Assistant United States Attorney Rayford A.

Farquhar ("Farquhar"), stating they are "true and correct copies"
that have been produced and exchanged during discovery. (Docket
Entry ## 35-1, 48-1). Additionally, defendant maintains that
the various exhibits are made on personal knowledge and
otherwise set out facts that would be admissible in accordance
with Rule 56(c). (Docket Entry # 48).

A.   EEOC Affidavits

Plaintiff initially argues that the five affidavits (Docket
Entry ## 36-3, 36-5, 36-6, 36-7, 36-10) produced during the EEOC
proceedings are not based on the personal knowledge of the
affiants and contain inadmissible hearsay. (Docket Entry # 40,
pp. 9-10). She also challenges the affidavits as not
authenticated. Defendant submits they are made on personal
knowledge and that the facts contained are admissible.

"'It is black-letter law that hearsay evidence cannot be
considered on summary judgment.'" Bennett v. Saint-Gobain Corp.,
507 F.3d 23, 28 (1st Cir. 2007) (quoting Dàvila, 498 F.3d at 7)
(brackets omitted). Unsworn statements in an internal complaint
or grievance made by individuals other than the complainant or
grievant may constitute hearsay if admitted for the truth of the
matter asserted. See id. (supervisor's statement "that he
wanted to get rid of older" workers within unsworn internal
grievance considered hearsay). Conversely, statements are
admissible as long as they are "not being offered to prove the

26

truth of the matters asserted . . ., but rather to prove the state of mind of the decision makers." <u>Staniewicz v. Beecham, Inc.</u>, 687 F.2d 526, 530 (1st Cir. 1982).  Moreover, as fully explained in footnote eight, emails containing statements between a superior and a plaintiff regarding the plaintiff's poor performance and forwarded to a decision-maker are not hearsay when used to show that the decision-maker "had reason to believe" the plaintiff was a poor performer.  <u>Xiaoyan</u>, 821 F.3d at 221 n.15.

Separately, affidavits originally prepared for the EEOC may be considered part of the summary judgment record as long as the facts would ordinarily be admissible as evidence.  <u>Doherty v. Donahoe</u>, 985 F.Supp. 2d 190, 195 (D. Mass. 2013).  Furthermore, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed.R.Evid. 602.  "Testimony is 'inadmissible under Rule 602 only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed what he testified to.'" <u>United States v. Brown</u>, 669 F.3d 10, 22 (1st Cir. 2012) (quoting <u>United States v. Rodriguez</u>, 162 F.3d 135, 144 (1st Cir. 1998)).

Turning to each of the EEOC affidavits in light of the above principles, Reis' affidavit recites his work history and personal biographical information as well as his involvement as

a human resources representative during the termination process of plaintiff.  (Docket Entry # 36-3, pp. 2-3).  Reis also provided guidance to Saunders regarding plaintiff's termination.  (Docket Entry # 36-3, p. 5, No. 4) (Docket Entry # 36-5, pp. 4, 6).  Such information is based on Reis' personal knowledge and is not hearsay.  Because Reis is an employee who has personal knowledge regarding the involvement of the human resources department in the termination process, this court used his affidavit to show the specific involvement of Reis and the human resources department, including the decision makers involved in the termination.  (Docket Entry # 36-3, p. 4, No. 1).  Appropriately, as stated in his affidavit, Reis relied on the co-employees' emails to plaintiff's supervisor for his knowledge about performance deficiencies (Docket Entry # 36-3, p. 5), in other words, the emails gave Reis reason to believe that plaintiff had performance deficiencies as did the emails from Saunders.  See Xiaoyan, 821 F.3d at 221 n.15 ("these emails were not admitted to demonstrate that Tang was a poor performer, but that those in charge of hiring decisions at Citizens had reason to believe that she was").[22]  In light of the foregoing, the motion to strike is denied to the extent stated above.  Reis, however, did not work with plaintiff and this court did not consider his testimony as evidence that plaintiff had the stated

---

[22]  See footnote eight.

performance deficiencies or exhibited deficient workplace performance. (Docket Entry # 36-3, pp. 4-5). In this respect, the motion to strike is allowed. Finally, as to any double hearsay, the coworkers submitted emails to Saunders in the ordinary course of their duties and plaintiff fails to show "a lack of trustworthiness" within the meaning of Fed.R.Evid. 803(b).[23] (Docket Entry # 36-5, p. 5).

Plaintiff also seeks to strike Reis' EEOC affidavit as not properly authenticated. (Docket Entry # 40, p. 8). Defendant submits that the Farquhar declaration authenticates the affidavit. This court considered the limited portions of Reis' affidavit that was based on Reis' personal knowledge and to the extent it showed Reis had reason to believe plaintiff was a deficient performer.

"As to authenticating an affidavit supporting or opposing a motion for summary judgment, Federal Rule of Civil Procedure 56(c)(4) states that '[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out the facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" Cincinnati Ins. Co. v. Quorum Mgt. Corp., No. 5:12-CV-406-OC-10PRL, 2014 WL

---

[23] The above ruling is made for purposes of summary judgment only. This court expresses no opinion as to whether the emails are admissible at trial.

585426, at *2 (M.D. Fla. Feb. 14, 2014); see also Fed.R.Evid. 901(b)(1). The authenticity challenge does not warrant striking Reis' affidavit or the other EEOC affidavits (Docket Entry ## 36-5, 36-6, 36-10) that otherwise comply with Fed.R.Civ.P. 56(c)(4).

Turning to Saunders' EEOC affidavit, it includes the written responses of Saunders regarding his work history and personal biographical information as well as his interactions with plaintiff, as her direct supervisor, leading up to and culminating in her termination. (Docket Entry # 36-5, pp. 1-7). Saunders has the requisite personal knowledge, as plaintiff's direct supervisor, to support these affidavit statements, which are not hearsay. Further, as explained in footnote eight, this court did not consider the email messages (Docket Entry # 36-5, pp. 5-6) as evidence that plaintiff had the performance issues stated in the emails. As to emails addressing events not involving Saunders as a participant, those emails are considered to show that Saunders had reason to believe plaintiff had performance deficiencies. The motion to strike the foregoing (Docket Entry # 36-5, pp. 1-7) is denied except to the extent that this court did not consider the email messages for the truth that plaintiff had any deficiencies alleged by the coworkers (Docket Entry # 36-5, pp. 5-6).

The affidavit also includes an addendum in which Saunders

describes verbal counseling sessions Saunders had with plaintiff
and summarizes numerous instances of plaintiff's errors
reflected in emails from coworkers to Saunders. (Docket Entry #
36-5, pp. 8-11). In addition to challenging the statements in
the addendum for lack of personal knowledge and as hearsay,
plaintiff maintains that the unsworn addendum is not
authenticated. Defendant submits that the Farquhar declaration
authenticates the exhibits attached to the LR. 56.1 statement, a
category that includes the statements in the addendum.

The 2010 amendments to Rule 56 dispensed with the
"'requirement that documents submitted in support of a summary
judgment motion must be authenticated.'" Akers v. Beal Bank,
845 F.Supp. 2d 238, 243 (D.D.C. 2012). Where, as here, a party
objects that "material cited to support or dispute a fact *cannot
be presented in a form* that would be admissible in evidence,"
Fed.R.Civ.P. 56(c)(2) (emphasis added), the burden "falls 'on
the proponent to show that the material is admissible as
presented or *to explain* the admissible form that is
anticipated.'" Akers v. Beal Bank, 845 F.Supp. 2d at 243
(Advisory Committee Notes, 2010 Amendment, Rule 56) (emphasis
added); see, e.g., Deakins v. Pack, 957 F.Supp. 2d 703, 753
(S.D.W. Va. 2013) (considering exhibits "for purposes of a
motion for summary judgment because the documents can be
submitted in authenticated form at trial").

Authentication requires the proponent to "'produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" Navedo v. Nalco Chem., Inc., 848 F.Supp. 2d 171, 201 (D.P.R. 2012) (quoting Fed.R.Evid. 901(a)). Saunders did not send or author the emails. Cf. id. ("e-mails attached to Duggal's affidavit were e-mails that he had written himself" and thus sufficiently authenticated). "An attorney is an appropriate source to authenticate documents received in discovery." Shell Trademark Mgt. BV & Motiva Enterprises, LLC v. Ray Thomas Petroleum Co., Inc., 642 F.Supp. 2d 493, 510 (W.D.N.C. 2009) (emphasis added); see Orr v. Bank of America, 285 F.3d 764, 777 n.20 (9th Cir. 2002) (documents produced during discovery authentic when offered by party opponent); Lawson-James v. City of Atlanta, Civil Action No. 1:10-0833-HTW-CCH, 2011 WL 13176102, at *3 (N.D. Ga. July 14, 2011) (noting that other courts "have held that documents produced by another party in discovery and submitted for the Court's consideration on summary judgment are 'self-authenticating'"); In re Greenwood Air Crash, 924 F. Supp. 1511, 1514-15 (S.D. Ind. 1995). By affidavit, Saunders states that he and Reis documented the instances of plaintiff's deficiencies and that the addendum details these instances. (Docket Entry # 36-5, p. 4, No. 4). The addendum is therefore authenticated by Saunders' sworn statement that the addendum consists of the details of the instances regarding plaintiff's

deficiencies "during [plaintiff's] performance appraisal."
(Docket Entry # 36-5, p. 4, ¶ 4).

Even though adequately authenticated for purposes of
summary judgment only (Docket Entry # 36-5, p. 4, ¶ 4), Saunders
lacks personal knowledge about a number of the events he
describes.  Thus, Saunders has personal knowledge of the events
where he met with plaintiff or personally observed her behavior.
Saunders, however, lacks personal knowledge of the misconduct
reported to him by coworkers which Saunders did not observe.
The former category is part of the summary judgment record.  As
more fully explained in footnote eight, the latter category is
considered only to show that Reis and Saunders had reason to
believe that plaintiff was performing deficiently.

Plaintiff also seeks to strike an affidavit authored by
Abramson and originally produced during the EEOC investigation.
(Docket Entry # 36-6).  Abramson's affidavit addresses his work
history and personal biographical information.  It also includes
information about plaintiff's performance.  Abramson did not
work directly with plaintiff but would greet her in the hallways.
There is no evidence that Abramson was at any meetings with
plaintiff or participated in any counseling of plaintiff.
Abramson's comments about plaintiff's performance (Docket Entry
# 36-6, p. 7) are not considered because he has no personal
knowledge about her deficiencies or that she attended certain

meetings.  As Abramson was involved in the termination (Docket
Entry # 36-6, p. 4), the affidavit is admissible to show that
Abramson had a reason to believe that plaintiff was performing
deficiently.

Plaintiff also seeks to strike an affidavit she authored
and originally produced during the EEOC investigation.  (Docket
Entry # 36-7).  Plaintiff's affidavit is a statement by an
opposing party, plaintiff, that defendant can offer against
plaintiff.  See Fed.R.Evid. 801(d)(2).  As such it is not
hearsay.  Fed.R.Evid. 801(d).

Plaintiff next seeks to strike an affidavit authored by
DeChambeau and originally produced during the EEOC investigation.
(Docket Entry # 36-10).  DeChambeau's affidavit addresses her
work history and personal biographical information as well as
her involvement as a human resources representative during the
termination process of plaintiff.  She "reviewed the evidence
supporting the termination" but did not work with plaintiff and
cannot testify on personal knowledge about the quality of
plaintiff's work.  (Docket Entry # 36-10, p. 3).  The affidavit
is therefore only considered to show DeChambeau's work history,
biographical information, what she did during the termination
process, and her understanding of the reason for the termination.

B.   Performance Appraisal

Plaintiff also moves to strike the six-page performance

appraisal (Docket Entry # 36-8) as not authenticated and as hearsay. Plaintiff testified that she was never given this six-page performance appraisal and that she was given a two-page performance appraisal. (Docket Entry # 42, pp. 4-5). Saunders indicated, during his deposition, that he discussed this appraisal with plaintiff during the November 2009 meeting. (Docket Entry # 48-1, p. 8). As explained in footnote 14, discrepancies within the performance appraisal and the contrary testimony regarding the page length of the performance appraisal address the weight of the document and not its authenticity. See Deverso, 518 F.3d at 1256; see also McGowan, 552 Fed.Appx. at 955. Notably, the performance appraisal is properly authenticated by Saunders' testimony in his deposition. (Docket Entry # 48-1, p. 8).

With respect to plaintiff's argument that the performance appraisal "constitutes hearsay," plaintiff simply asserts that the document "is not admissible to prove what it asserts, namely, that [plaintiff's] performance was less than satisfactory." (Docket Entry # 40, p. 10). Plaintiff cites no legal authority and fails to develop any argument why the performance appraisal is hearsay. She therefore waives the issue for purposes of summary judgment. See Merrimon v. Unum Life Ins. Co. of America, 758 F.3d 46, 57 (1st Cir. 2014); Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010).

In any event, there is no indication that the appraisal constitutes or contains a "statement" by a "declarant" within the meaning of Fed.R.Evid. 801(a) and (b).

C.  Emails

Plaintiff seeks to strike exhibit eight which consists of a series of emails and email threads sent and/or received by Saunders, Reis, Flanagan, Abramson, and DeChambeau.  Plaintiff maintains that the emails are not authenticated and contain "numerous instances of hearsay and cannot be considered for the truth of what they assert."  (Docket Entry # 40, pp. 10-11).  A number of the emails contain summaries of incidents of plaintiff's mistakes and performance deficiencies reported by coworkers to Saunders and/or copies of coworkers' complaints emailed to Saunders.

Defendant states that Saunders, Abramson, and Reis provided affidavits during the EEOC proceedings "and can testify that they were involved in the electronic mail stream."  (Docket Entry # 48).  Defendant further asserts that these affiants are competent to testify at trial regarding the emails.  (Docket Entry # 48).  Defendant therefore adequately explains the admissible form anticipated at trial to authenticate the emails. See Akers v. Beal Bank, 845 F.Supp. 2d at 243; accord Deakins v. Pack, 957 F.Supp. 2d at 753.

As to hearsay, plaintiff's brevis argument that, "the emails contain numerous instances of hearsay and cannot be considered for the truth of what they assert" is therefore moot and otherwise waived for reasons stated with respect to the performance appraisal. In any event, as explained previously, the emails that include coworkers' statements are not admissible to show the truth of the matters asserted, i.e., that plaintiff made the mistakes alleged in the statements.[24] Rather, the statements are admissible to show that Saunders and the other decision makers had reason to believe plaintiff that made mistakes thus supporting an absence of pretext and discriminatory animus. See Xiaoyan, 821 F.3d at 221, n.15.

Likewise, an email from Abramson to Gilbert Rodriguez, the EEO investigator, explaining that Trodella and Kane were treated no differently than plaintiff is not admissible to show the truth of the matters stated. Abramson did not directly work with plaintiff and cannot testify to the quality of plaintiff's work. Additionally, nothing in the record indicates that Abramson worked with Trodella or Kane and has personal knowledge as to the quality of their work. The email is (Docket Entry # 36-9, p. 16) therefore admissible to show Abramson had reason to believe that Trodella and Kane were better at their jobs than plaintiff and not for the truth of the matter, i.e., that

---

[24] See footnote eight.

Trodella and Kane were better at their jobs.  See Xiaoyan, 821 F.3d at 221, n.15.  Similarly, an email dated November 8, 2010 from DeChambeau to the EEO investigator is admissible to show that DeChambeau had reason to believe plaintiff was performing deficiently and had reason to believe that Trodella and Kane were retained because they lacked performance deficiencies. Finally, exhibit eight includes a November 9, 2010 email from Saunders to the EEO investigator stating that plaintiff had performance issues whereas Trodella and Kane did not have performance issues.  Because Saunders was the supervisor of plaintiff, Trodella, and Kane, and therefore has the requisite personal knowledge to give this explanation in response to plaintiff's EEOC contention that she was treated differently, the email is part of the summary judgment record.

CONCLUSION

In accordance with the foregoing discussion, defendant's motion for summary judgment (Docket Entry # 35) is **DENIED**.  To the extent set forth above, the motion to strike (Docket Entry # 45) is **DENIED** in part and **ALLOWED** in part.  The deadline to file summary judgment motions has passed and there will be no extensions.  This court will conduct a status conference to set a trial date on August 22, 2017 at 2:30 p.m.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge